## THE STATE VS. VANDIMARK.

1. FALSE PRETENSE: *What it is.*

    A false pretense is such a fraudulent representation of an existing or past fact, by one who knows it to be false, as is adapted to induce the person to whom it is made, to part with something of value.

2. SAME: *Indictment where several pretenses.*

    If there be several false pretenses, only one of them need be set out in the indictment; or, if several be set out, and one be proven, the indictment is sustained.

The State vs. Vandimark.

ERROR to *Pulaski* Circuit Court.
Hon. J. W. MARTIN, Circuit Judge.
*Henderson, Attorney General,* for plaintiff.

HARRISON, J.   Jack Vandimark was indicted with Peter
Herman in the Pulaski circuit court, for obtaining money
under false pretenses, and being separately tried, was con-
victed and his punishment assessed by the jury at three
and one-half years' imprisonment in the penitentiary.   He
filed a motion in arrest of judgment, upon the ground that
the facts stated in the indictment did not constitute a pub-
lic offense, which motion the court sustained, and held him
to answer a new indictment.

The state has brought the case here by writ of error.

The indictment is as follows:

" STATE OF ARKANSAS,
            vs.                    } Pulaski County Circuit Court.
PETER HERMAN AND JACK
        VANDIMARK.

The grand jury of Pulaski county, in the name and by the
authority of the state of Arkansas, accuse Jack Vandimark
and Peter Herman of the crime of obtaining money by means
of false and fraudulent pretenses with the intent and design
to defraud Calvin Jamison, as follows, to wit:   On the
sixth day of December, A. D. 1879, the said Jack Van-
dimark aided and abetted by one Peter Herman, in the
county and state aforesaid, did designedly, feloniously and
by means of false and fraudulent pretenses with the felonious
intent and design, then and there to cheat and defraud him
the said Calvin Jamison, obtain from him the said Calvin
Jamison the following money, the property of him the
said Calvin Jamison, to-wit:   One twenty dollar bill of

United States currency, commonly called greenbacks, worth twenty dollars; one twenty dollar bank note, circulating as currency, commonly called bank note, worth twenty dollars; one ten dollar bill of United States currency, commonly called greenbacks, worth ten dollars, and two ten dollar bank notes circulating as currency, commonly called bank notes and worth each ten dollars, amounting in all to the number and value of seventy dollars, then and there furnished and delivered by him the said Calvin Jamison to the said Jack Vandimark at the instance and upon the false and fraudulent pretenses of them the said Jack Vandimark and Peter Herman in manner and form, and under the circumstances as follows, to-wit: That the said Peter Herman feloniously and deceitfully contriving, aiding and abetting to cheat and defraud the said Calvin Jamison, led him the said Calvin Jamison to the said Jack Vandimark, and then and there the said Peter Herman pretended to lend to the said Jack Vandimark a certain sum of money to this grand jury unknown, with the fraudulent intent to cause the said Calvin Jamison to lend and deliver to the said Jack Vandimark money; that then and there the said Jack Vandimark represented himself to be a stock owner from Kentucky, and then and there pretended that he had stock at the union depot in the county and state aforesaid, and was then on his way to Memphis to dispose of them the said stock; that he the said Jack Vandimark, together with his confederate, the said Peter Herman, would take him the said Calvin Jamison with them to Memphis, and would pay him one dollar per day; and the said Jack Vandimark further pretended that he had money in the bank in the city of Little Rock, county and state aforesaid, and that he was going immediately from the said depot to the said bank to draw

money and return to the said Calvin Jamison, when in truth and in fact he the said Jack Vandimark was not a, stock owner from Kentucky or any other state, neither in truth and in fact did he the said Jack Vandimark have any stock at said union depot, nor was he on his way to said Memphis to dispose of any stock whatever, nor in truth and in fact did he the said Jack Vandimark have any money deposited in any bank in the city aforesaid, all of which he then and there well knew. And the grand jury aforesaid further accuse the said Peter Herman on the sixth day of December, 1879, in the county and state aforesaid, of feloniously, fraudulently and knowingly pretending and representing .to him the said Calvin Jamison that he the said Vandimark was a fine gentleman, and a trusty, worthy and reliable man; that he the said Vandimark was a stock owner from Kentucky and had stock at the said union depot, and that he the said Vandimark was on his way to Memphis to dispose of said stock; and that he the said Vandimark had money in the bank in the city of Little Rock, county and state aforesaid; and that he the said Calvin Jamison would be perfectly safe in lending him the said Vandimark money, when in truth and in fact he the said Vandimark was not a fine gentleman and a trustworthy, reliable man, but a fakir and a cheat; and in truth and in fact he the said Vandimark was not a stock owner from Kentucky nor any other state, neither did he have any money in the bank aforesaid, nor any stock at said union depot, nor would he the said Calvin Jamison be safe in lending him the said Vandimark any money; all of which he the said Peter Herman then and there well knew; but the said false and fraudulent statements were made by him the said Peter Herman to him the said Calvin Jamison to give him the said Jack Vandimark a better opportunity to carry out

his felonious design of cheating and defrauding him the said Calvin Jamison by inducing him to part with his money, and by color and by means of the false pretenses and representations aforesaid of them the said Jack Vandimark and Peter Herman, he the said Calvin Jamison was induced to part with his said money, amounting to seventy dollars, which he the said Jack Vandimark then and there received and appropriated to his own use. And so the grand jury aforesaid accuse the said Jack Vandimark and Peter Herman of the crime of obtaining then and there from the said Calvin Jamison the said one twenty dollar bill of United States currency, commonly called greenbacks, worth twenty dollars; one twenty dollar bank note circulating as currency, worth twenty dollars; one ten dollar bill of United States currency, commonly called greenbacks, worth ten dollars, and two ten dollar bank notes circulating as currency, worth each, ten dollars, amounting in all to the sum of seventy dollars, the property of him the said Calvin Jamison, by false and fraudulent pretenses, as above set out, designedly, unlawfully and feloniously, with intent and design then and there to cheat and defraud the said Calvin Jamison to the great damage and deception of him the said Calvin Jamison against the form of the statute in such cases made and provided, and against the peace and dignity of the state of Arkansas."

1. FALSE PRETENSE: What it is. The indictment though very informally and loosely drawn, contains an averment of every fact necessary to constitute the offense charged as to the defendant in error. Though it is not stated that Vandimark borrowed, or promised to return the money, it is alleged that he obtained it by means of the false pretenses. A false pretense is such a fraudulent representation of an existing or past fact, by one who knows it not to be true, as is adapt-

ed to induce the person to whom it is made to part with something of value. *2 Bish. Crim. Law, sec. 415.*

In the case of *Young and others v. The King, 3 Term R., 98,* the first reported case under the statute of *30 Geo. 2, C., 24,* four men came to the prosecutor and falsely pretended to him that one of them, Young, had made a bet of five hundred guineas that William Lewis would run, on the next day, on the high road from Gloucestershire to Bristol, ten miles in one hour, and that the others were interested in the bet; and, by false pretenses, obtained from him twenty guineas of the five hundred. The indictment did not state that it was proposed that the prosecutor should become interested with them in the bet, or the particular consideration upon which he advanced the money. The persons were convicted and sentenced to be transported for seven years. The King's Bench, upon error, held that they were properly convicted.

A promise connected with an existing fact does not take the case out of the statute. "It is," says Bishop, "as to the criminal consequences, a mere nullity. If there is sufficient pretense of a false existing, or past fact, the consequence attached to it by the law is not overthrown by the promise; if there is not a sufficient pretense of this sort, the promise does not supply the defect." *2 Bish. Crim. Law, sec. 424.*

Though it is not directly charged that the false pretenses by Herman were made in the presence of Vandimark and concurred in by him, the indictment, which charges the false pretenses by Vandimark himself, that he was a stock owner, and had stock at the union depot and was on his way to dispose of it, and that he had money in bank in Little Rock, is sufficient; for if there be several false pretenses, only one of them need be set out, or if several be

2. ————:
*Indictment:*
Where several pretenses.

set out, if any one is proven, the indictment is sustained. *2 Bish. Crim. Proced.*, secs. *136, 137.*

The judgment is reversed and the cause remanded to the court below, with instructions to render judgment in accordance with the verdict.