PARKER *v.* STATE.

Opinions delivered April 10, 1911.

1. FALSE PRETENSES—INDICTMENT.—An indictment for false pretenses should allege the pretense, that it was false and known to the defendant to be so, that it was made to the person named in order to defraud him, and that by means of the false pretense the written instrument or thing of value was obtained. (Page 577.)

2. INDICTMENT—STATUTORY CRIME.—An indictment for a statutory crime need not follow the precise words of the statute, but words of similar import may be used, even though they may be of more extensive significance. (Page 578.)

3. FALSE PRETENSE—INDICTMENT.—A false pretense is a fraudulent representation of an existing fact or past event by one who knows it to be untrue, and of such nature as to induce the party to whom it is made to part with something of value; and the facts constituting such false pretense should be stated with due certainty. (Page 578.)

4. SAME—SUFFICIENCY OF PRETENSE AS INDUCEMENT.—The alleged false pretense need not be the only inducement to cause the party defrauded to sign the instrument or part with his goods, but it may be combined with other motives. (Page 578.)

5. CONSPIRACY—CIRCUMSTANTIAL EVIDENCE.—A conspiracy may be inferred where two or more persons by their acts pursued the same unlawful object, each doing a part, so that their acts, though apparently independent, were in fact connected. (Page 579.)

6. EVIDENCE—ACTS AND DECLARATIONS OF CONSPIRATOR.—Any act done or declaration made by one of two conspirators in furtherance or preparation of the conspiracy, though in the other's absence, may be shown as evidence against the other conspirator. (Page 581.)

7. FALSE PRETENSE—EVIDENCE.—Where defendant is charged with false pretense in securing a power of attorney to execute an absolute deed with $50 as consideration from the prosecuting witness by pretending that it was an authority merely to execute a mortgage for that amount, it was competent to show that the prosecuting witness had been offered $100 for the land on the day before the deed in question was executed, and that she had fixed a price of $300, as such facts were circumstances tending to show that she did not intend to authorize the execution of an absolute deed. (Page 581.)

8. SAME—INSTRUCTION.—It was not error to instruct the jury, in a prosecution for false pretense, in effect that defendant was not guilty if the prosecuting witness was not deceived by defendant's alleged representations. (Page 582.)

Appeal from Sebastian Circuit Court; *Daniel Hon*, Judge; affirmed.

*Ira D. Oglesby*, for appellant.

1. The indictment is *bad* for uncertainty and ambiguity as to parties, offense, county and circumstances. 35 Ind. 419.

2. The instructions are erroneous, and the court erred in admitting testimony.

3. The testimony is at variance with the indictment. In

false pretenses it is necessary to set out the false statements and prove them as alleged.   60 Ark. 142.

*Hal L. Norwood,* Attorney General, and *Wm. H. Rector,* Assistant, for appellee.

1.   The indictment is sufficient under our statute.   17 Tex. App. 213; 25 Ohio St. 217; 115 Mass. 481; 34 N. Y. 351; Kirby's Dig. § 1689; 60 Ark. 13; Kirby's Dig. § § 2228-9, 2241-2243.

2.   Where the offense is stated with such certainty that the accused knows what he is called upon to answer, and the court and jury the issue they are to try, and an acquittal might be pleaded in a subsequent prosecution, the indictment is sufficient. 5 Ark. 444; 19 *Id.* 613; 84 *Id.* 487; 81 *Id.* 25; 95 Ark. 48; 93 Ark. 406; 92 *Id.* 413; 94 Ark. 65; 81 Ark. 25.

3.   There is no error in the instruction, and the evidence sustains the verdict.

4.   The statements of Owens were admissible to show a conspiracy.   77 Ark. 44.

FRAUENTHAL, J.   Defendant, Moses Parker,.was jointly indicted with one R. B. Owens, charged with the crime of false pretenses.   A demurrer was interposed to the indictment upon the grounds, (1) that the facts therein stated did not constitute a public offense; (2) that the indictment charged more than one offense; and (3) that the allegations were too vague, uncertain and conflicting to apprise defendant of the exact accusation brought against him.   The demurrer was overruled, and thereupon the trials were severed at the instance of the defendants, and upon his separate trial Parker was convicted, and has appealed to this court.

The indictment was founded upon section 1689, Kirby's Digest, which provides that "every person who, with intent to defraud or cheat another, shall designedly or by color of any false token or writing, or by any other false pretense, obtain the signature of any person to any written instrument, or obtain from any person any money, personal property, right of action or other valuable thing or effects whatever," shall be guilty of this offense. In order to cover the elements of this offense, the indictment should allege.the pretense, and that it was false and known by the defendant to be so, and that it was made to the person named in order to defraud him, and that by means of the false pretense the

written instrument or thing of value was obtained.  2 Bishop, New Crim. Law, § 163.

It is not necessary that the precise words of the statute should be followed, but words of similar import may be used, even though they may be of more extensive signification.  The facts, however, should be stated with that degree of certainty and particularity as will apprise the defendant of the charge that is brought against him; but the indictment will be sufficient if it sets forth in language that may be readily understood all the elements of the offense.  By the provisions of our Code, an indictment is sufficient if it contains "a statement of the acts constituting the offense in ordinary and concise language, in such manner as to enable a person of common understanding to know what is intended," and if the "act or omission charged as the offense is stated with such a degree of certainty as to enable the court to pronounce judgment on conviction according to the right of the case."  Kirby's Digest, § § 2243 and 2228.

The false pretense itself is a fraudulent representation of an existing fact or past event by one who knows that it is not true, and of such a nature as to induce the party to whom it is made to part with something of value; and the facts constituting such false pretense should be stated with due certainty.  But the false pretense need not be the only inducement to cause the party defrauded to sign the instrument or part with his goods; the pretense may be combined with other motives or be partly founded upon some promise.  It is sufficient if the false pretense operated either alone or with other causes.  Therefore it will not invalidate an indictment to allege other facts, promises or causes in conjunction with the false pretense which is specifically set forth, if such false pretense is sufficient.  2 Bishop, New Crim. Law, § 1461; 19 Cyc. 421; *State v. Vandimark,* 35 Ark. 396; *Johnson v. State,* 36 Ark. 242; *Donohoe* v. *State,* 59 Ark. 375.

The indictment in this case, though somewhat loosely and informally drawn, contains an averment of every fact necessary to constitute the offense charged, and we think with sufficient clearness that, taken as a whole, the defendant would understand and be apprised of the nature of the accusation brought against him.  We do not deem it necessary to set out this indictment *in extenso;* it is sufficient to say that in language that can be under-

stood it charges that the defendant induced one Jessie Byrd to sign a power of attorney authorizing and impowering his co-defendant, Owens, to sell her land, by falsely representing that the instrument was only a power of attorney authorizing and impowering said Owens to mortgage the land in order to secure a loan of fifty dollars for her; that the representation was false, and known by the defendant to be so, and was made with the intent to obtain her signature to the instrument in order to defraud her, and that through this inducement it was signed and delivered and the party defrauded. The indictment contains other allegations, but they only constitute a recital of acts done or promises made by the defendants in conjunction with the above alleged false pretense. These further allegations were unnecessary, but they did not charge any other or different offense, and were not so vague or conflicting as to involve in uncertainty the above specific charge of false pretense made against defendant. We do not think that the court erred in overruling the demurrer to the indictment.

It is urged by the defendant that the court committed error in permitting the introduction of certain testimony which he claims was incompetent. This testimony complained of refers chiefly to statements that were made by said Owens in the absence of the defendant. It appears from the testimony that the party Jessie Byrd owned twenty acres of land in the State of Oklahoma, and on the day the offense is alleged to have been committed she came, in company with her mother and said Owens, to the city of Fort Smith for the purpose of selling her land. She valued it at three hundred dollars, and, after arriving at Fort Smith, Owens informed her that he did not think that it could be sold at any price which she was willing to take therefor. It was then suggested by her and her mother that they would like to borrow some money by giving a mortgage thereon, and about this time the parties met with the defendant Parker. It appears that Jessie Byrd had known defendant Parker for a number of years, and that he had been her teacher when she was a young girl.

Owens stated that, in order for him to negotiate the loan, it was necessary for Jessie Byrd to execute to him a power of attorney authorizing him to execute the proper papers to secure the loan, and thereupon the defendant Parker suggested that they

go to the office of a stenographer whom he knew, and who could draft the necessary papers. The testimony on the part of the State tended to prove that when these parties arrived at the office of the stenographer Owens and defendant Parker directed him to draft the power of attorney, which he did. It appears that Jessie Byrd was 18 years old, and that she and her mother were very ignorant; but they stated that the only power of attorney which they wished to sign was such as would only authorize Owens to give a mortgage upon the land in order to secure the fifty dollars, and that, after the instrument was drafted, Jessie Byrd hesitated about signing it at the suggestion of her mother, and thereupon the defendant said to her that the instrument was only a power of attorney authorizing Owens to mortgage the land, and that he could not sell it thereunder; and further reminded her that he had been her teacher, and said that he had never taught her anything wrong, and urged her to touch the pen in order to sign the instrument, and assured her that it was as he had indicated, and that Owens could not sell the land thereunder. Induced by these representations, Jessie Byrd signed the instrument and delivered it to Owens; and as the parties left the stenographer's office Owens told Jessie Byrd and her mother to go to a hotel until he should obtain the money. This latter statement was not made in the immediate presence or hearing of Parker, but he was near by, and thereupon left in company with Owens. Some time later in the day Owens went to the hotel where Jessie Byrd and her mother had gone, and there paid to them $49 which he claimed he had borowed by giving a mortgage upon the land; and Parker, while not then immediately present, was seen at the door of the room where the parties were, and during the time the money was being counted came in and thereafter remained with the parties.

The power of attorney which Jessie Byrd actually signed gave full power and authority to Owens to sell the land and to execute a deed therefor; and after it had been signed by Jessie Byrd, and prior to the time Owens paid over to her the above money, he executed a deed for the land to the defendant Parker, who thereupon sold the land and executed a deed therefor to one Alford, receiving $80 therefor.

We think that the testimony in this case was sufficient to

show that there was a conspiracy between the defendant and Owens to obtain from Jessie Byrd the power of attorney to sell this land, and thereby to defraud her. In order to establish a conspiracy, it is not necessary to prove the unlawful combination between the parties by direct evidence. It may be shown by circumstances.

In the case of *Chapline* v. *State*, 77 Ark. 444, it is held that a conspiracy may be inferred, although no actual meeting among the parties is proved, if it be shown by the testimony that two or more persons pursued by their acts the same unlawful object, each doing a part, so that their acts, though apparently independent, were in fact connected; and in the same case it is held that any act done or declaration made by one of the conspirators in furtherance or perpetration of the alleged conspiracy may be shown as evidence against his fellow conspirators.

The testimony in this case shows that there was a concert of action between the defendant and Owens in securing from Jessie Byrd the execution of the power of attorney, and that in pursuance of that conspiracy Owens executed a deed for the land to the defendant, who thereupon sold and conveyed the land to Alford and collected the money therefor. All the statements made by the parties up to the time the money was paid to Jessie Byrd upon the alleged mortgage were but parts of the transaction by which the fraud was perpetrated. We think, therefore, that the statements made by Owens, even if it should be considered that they were made in the absence of the defendant, were competent as evidence against the defendant.

It is also urged that certain testimony given by the mother of Jessie Byrd that they had been offered one hundred dollars for the land by Alford on the morning before they met Parker, and also that they had fixed a price of three hundred dollars on the land for the sale thereof, was incompetent because the transactions were not had in the presence of the defendant. But we think that these statements were competent in order to show that Jessie Byrd and her mother considered the land as being worth more than the sum of $50, and therefore as a circumstance to show that they did not knowingly and understandingly sign the power of attorney to sell the land, but that they understood the

instrument which she signed was only a power of attorney to mortgage it, when they received only the sum of fifty dollars.

Defendant complains of other testimony that was introduced; but he did not preserve his objection thereto in the motion for a new trial, and must therefore be held to have abandoned same.

It is urged that the court erred in giving the following instruction to the jury at the request of the State: "If the jury believe from the evidence that the power of attorney was drafted by the witness Parmalee at the request of Jessie Byrd, or at her request in conjunction with her mother and Owens; that it was written by Parmalee as he was requested to do so by said Jessie Byrd or her mother or by Owens with their consent, and that he explained it to said Jessie Byrd, and that she understood the nature and character of the instrument she was signing, and that she was not deceived by Owens's and Parker's representations as to the nature of said instrument, the defendant would not be guilty as charged."

It is contended that this instruction is misleading, and makes defendant's guilt depend, not upon the false · representation charged in the indictment, but upon whether Jessie Byrd "understood the nature and character of the instrument she was signing." But we do not think that this instruction is open to this objection. Before the defendant could be convicted, it was essential to prove that Jessie Byrd did not understand the nature and character of the instrument she was signing. The false representation which the indictment charges the defendant made was that the instrument was of a different nature and character from what it really was, and that by reason of such false representation she was induced to sign it. Before defendant could be convicted, it was necessary for the State to prove, not only that he made false representations, but also that such false representations induced Jessie Byrd to sign the instrument. Therefore, if she understood the nature and character of the instrument before signing it, she could not have been induced to do so by reason of any false representations made by the defendant. We think, therefore, that the above instruction was not erroneous, but was a correct statement of the law, though somewhat favorable to the defendant.

It is also urged by the defendant that the evidence introduced upon the trial of this case was not sufficient to warrant a convic-

tion of the defendant. There is a conflict in the testimony as to what occurred at the office of the stenographer when the instrument was drafted, and as to what occurred at the office of the notary public when the same was acknowledged. The testimony of the stenographer and of the notary public tended to show that the instrument was read over to Jessie Byrd; but we think there is ample evidence to show that the defendant and Owens made the false representations to her as to the nature and character of the instrument she signed, and that she did not understand the true character thereof, but was induced to sign same by reason of said false representation.

We think that there was sufficient legal evidence introduced upon the trial of this case to sustain the verdict of the jury, and it therefore becomes conclusive upon this appeal.

The judgment is accordingly affirmed.