## JAMES *v.* STATE.

4646                                    236 S. W. 2d 429

Opinion delivered February 12, 1951.

*N. J. Henley,* for appellant.

*Ike Murry,* Attorney General, and *Robert Downie,* Assistant Attorney General, for appellee.

ROBINSON, J. The appellant was convicted in the Van Buren County Circuit Court on a charge of obtaining personal property by false pretense. The sole question presented to this Court is the sufficiency of the evidence to sustain the charge set out in the information which, omitting the formal parts, is as follows:

336

"The said defendant, on the 1st day of January, 1949, in Van Buren County, Arkansas, did unlawfully, wilfully, falsely, fraudulently, feloniously and with felonious intent to obtain from Ray Lewis a certain check in the sum of $1,430, which had been delivered to the said Ray Lewis in payment for lumber by H. H. Youngblood, drawn on the Douglas County Bank of Omaha, Nebraska, and purportedly signed by R. A. Langill, as maker, did, as agent of the said H. H. Youngblood, falsely, wilfully, fraudulently and feloniously represent to the said Ray Lewis that he, the said Gordon James, would pay $800 in cash for said check, and give to the said Ray Lewis a check on him the said Gordon James for $630 as a balance on same, and did further represent that he had sufficient money to take care of said check in the sum of $630; that he owned his home at 2103 College Street, Springfield, Missouri, which was very valuable and that said check would be paid when presented for payment; relying upon this statement of facts by the defendant, the said Ray Lewis took said check in the sum of $630; the said check went its usual course and in due time returned with notation 'No Account.' That defendant in truth and in fact well knew at the time of giving the check that there would be no balance in the bank at Branson, Missouri, on which it was drawn to pay said check when it was presented; that the defendant made the unlawful, wilful, false, fraudulent and felonious representation to Ray Lewis, with the felonious intent to cheat and defraud and did cheat and defraud him, the said Ray Lewis, in the amount of $630, against the peace and dignity of the State of Arkansas."

Ray Lewis is engaged in the lumber business at Clinton, Arkansas. In due course of trade, on October 7, 1948, one H. H. Youngblood endorsed and transferred to Lewis a check in the sum of $1,430, drawn by R. A. Langill, in favor of Youngblood, on the Douglas County Bank of Omaha, Nebraska. This check was not paid upon being presented to the bank by Lewis.

In November or December, 1948, the exact date being in dispute, but immaterial, the appellant, Gordon

James, whose home is in Springfield, Missouri, went to Clinton and contacted Lewis in regard to the $1,430 Langbill check which Lewis had received from Youngblood.

The appellant and Lewis entered into a deal whereby for the consideration of $800 cash and appellant's postdated personal check in the sum of $630 drawn on the Security Bank, Branson, Missouri, Lewis turned over to appellant the Langill check. It was understood between the parties that appellant did not have the money in the bank at the time he gave his personal check to Lewis. Lewis testified, however, that appellant promised that the check would be good by January 1st.

When James, the appellant, left Clinton by automobile, Lewis suspected that Youngblood might be with him and had the car intercepted by officers of the law. His suspicion proved to be correct, and Youngblood was arrested and brought back to Clinton. The appellant voluntarily returned to Clinton and went to see Lewis the next day.

The appellant states that he had made a deal with Youngblood for the purchase of a truck and since Youngblood had been arrested, he realized that the deal could not be consummated. Therefore, he offered to return the $1,430 Langill check to Lewis if Lewis would return appellant's check for $630, and Lewis could keep the $800 cash and credit it on the Langill check. Lewis admits that appellant called upon him the following morning after the arrest of Youngblood, but does not remember if appellant offered to return the $1,430 check. In any event Lewis kept the $800 cash. At this time Lewis knew, as he had known all along, that appellant did not have the $630 in the bank. However, appellant's check was presented to the bank for payment and returned marked "No Account."

During all of this time, no effort was made to bring about the arrest of appellant, but 8 months later in August, 1949, he was arrested upon the present charge.

A postdated check taken by the payee with full knowledge that it is postdated, and where it is not represented by the maker as being good at the time given, but that the money would be deposited in the bank at some future date, is no more than a promissory note. It is a promise to do something in the future, and is not a representation upon which a charge of false pretense can be successfully based. For a false representation to amount to a crime, it must relate to an existing fact or a past event. In speaking for the Court in the case of *Fisher* v. *State,* 161 Ark. 586, 256 S. W. 858, Mr. Justice HART said:

"It is well settled by our decisions that a false pretense is a false representation of an existing fact or past event by one who knows that it is not true, and which is of such a nature as to induce the party to whom it is made to part with something of value, and it is only necessary that the false pretense be the inducing motive to the obtaining of the goods or money by the defendant." See, also, *Parker* v. *State,* 98 Ark. 575, 137 S. W. 253; *Lawson* v. *State,* 120 Ark. 337, 179 S. W. 818, and *Lamb* v. *State,* 202 Ark. 931, 155 S. W. 2d 49.

But, the State contends the appellant represented that he owned his home, that this representation was false and thereby sufficient to sustain the charge. We do not agree with this view. Lewis had a check in the sum of $1,430 drawn on a bank in Omaha by a person apparently unknown to Lewis. The check had been dishonored by the bank upon which it was drawn, and, for this check, appellant gave Lewis $800 in cash and a postdated check for $630. Neither Lewis nor L. N. Woodell, who was interested with Lewis in the transaction testified that they would not have accepted the $800 cash and the postdated check in exchange for the Langill check if the representation as to home ownership had not been made by appellant. Even if appellant had owned his own home, Lewis and Woodell could hardly have thought it would not be exempt from execution on a judgment of the kind which could be obtained on the postdated check. It was not such a representation as

would cause any one to part with anything of value. Furthermore, there is no showing that appellant was not the owner of an equity in the property. Lewis did not ask that the postdated check be secured by a mortgage nor did he even ask for a legal description, nor obtain an abstract or have one examined.

In view of the character of representations made by appellant regarding his ownership of a home, the testimony regarding this phase of the transaction does not substantially show that reliance upon these alleged assertions motivated release of the $1,430 check.

Reversed and dismissed.