COLBERT *v*. STATE.

4652                                              238 S. W. 2d 749

Opinion delivered April 23, 1951.

*Ovid T. Switzer* and *W. P. Switzer,* for appellant.

*Ike Murry,* Attorney General, and *Arnold Adams,* Assistant Attorney General, for appellee.

GRIFFIN SMITH, Chief Justice. Appellant as the defendant below was tried on grand jury charges that he operated a gaming house, "in violation of Title 41-2001, Arkansas Statutes, 1947." Punishment was fixed by the jury at the minimum permitted by law. It is contended (a) that the gaming house in question was a stretch of

woodland traversed by a railway used in hauling logs; (b) it was a mile from human habitation and inaccessible to automobiles; (c) the equipment consisted of several bench-tables made from planks nailed between posts, three of which were used for crapshooting purposes; and, (d) the court erred in not directing acquittal.

State witnesses fixed the gaming operations at a point near the railroad in West Crossett—''about a mile from Ruth Norman's place, between Crossett and West Crossett.'' There was testimony that crapshooting had been going on there for about two years. There were three tables. The defendant had stated that one was his. He would hold the money—''keep it straight.'' When this witness patronized the place there would usually be ''a bunch'' [in attendance] when he got there. Everett Colbert was ''the boss'' of operations at his table.

Another witness replied affirmatively when asked, ''Do you know whether there is a regular crap game played on a regular crap table out by West Crossett [near] the railroad track?'' He had never seen anyone running ''that particular game'' except the defendant.

This witness, after explaining how the planks were nailed to posts, was asked on cross-examination, ''Do they have a blanket over them, or anything?'' A. ''Yes, they have some kind of cloth or something over them.'' The largest crowd gathered for gaming Saturdays— ''morning or afternoon, but they don't gamble on Saturday nights.'' The witness then said: ''I play a little here (referring, presumptively, to the defendant's operations), and if I lose there I go to another table. It is a general meeting place—a place to congregate and gamble.''

The statute mentioned in the indictment extends to all persons who are interested, directly or indirectly, in keeping, conducting, or operating a gambling house, *''or place where gambling is carried on.''* While the indictment did not expressly differentiate between ''keeping or conducting a gambling house'' and ''keeping or conducting a place where gambling is carried on,'' the offense

alleged was mentioned as a violation of Ark. Stats., § 41-2001, and the section contains the interdiction against conducting a *place* where gambling is engaged in. In charging the jury this statute was read.

Appellant calls attention to certain expressions in *Turner* v. *State*, 153 Ark. 40, 239 S. W. 373, and emphasizes the fact that his place was not equipped with lights and that operations were not carried on at night. The jury, of course, could have inferred that night games were dispensed with because lights would attract public attention. In the *Turner* case Judge Wood said that the statute was leveled at the specific offense of keeping, conducting, or operating a house *or place* for the purpose of allowing gambling to be carried on. An instruction told the jury that if it believed Turner was guilty of knowingly permitting a gaming table to be maintained . . . in a certain house "used and controlled by said defendant," then under the evidence he would be guilty.

From the Turner case, and from statements in *Cain* v. *State*, 149 Ark. 616, 223 S. W. 779, and *Sorrentino* v. *State*, 214 Ark. 115, 214 S. W. 2d 517, it is argued that conviction cannot be upheld unless the defendant had control and supervision of the premises. Since the locale was part of a railroad right-of-way there could not, in appellant's view, be control sufficient to justify an application of the statute. In *Tully* v. *State*, 88 Ark. 411, 114 S. W. 920, the state was required to show that the defendant was interested in the poker game "as a banker or exhibitor," and this case is cited in support of the contention that control of the premises was essential. But the statute in that case (Kirby's Digest, § 1732) is not the enactment relied upon in this appeal. It appears as Ark. Stats., § 41-2003.

In the instant case the thing prohibited, as has been pointed out, is keeping, conducting, or operating any gambling house, *or place where gambling is carried on.*

It is not unreasonable to believe that the lawmakers, in adding the words [that have been italicized for the purpose of this opinion] contemplated extraordinary cir-

cumstances where the thing sought to be prohibited,—that is, gambling at the invitation of one operating for profit—might be at a *place* as distinguished from a house. Here the place had been operated regularly for a long time. It was known to large numbers, and the location was near enough to Crossett and West Crossett to satisfy the purpose of the operator. Appellant did not own the land, but insofar as his patrons were concerned he controlled it. This was sufficient.

Affirmed.

HOLT, WARD and ROBINSON, JJ., dissent.

HOLT, J., dissenting. The indictment charged Everett Colbert, Negro appellant, as follows: "The Grand Jury of Ashley County, in the name and by the authority of the State of Arkansas, accuse Everett Colbert of the crime of Keeping Gambling House committed as follows, to-wit: The said Everett Colbert in the county and State aforesaid, on the 15th day of July, A. D., 1950, did unlawfully keep, conduct and operate a gambling house in Violation of Title 41-2001, Ark. Stats. (1947), and against the peace and dignity of the State of Arkansas."

Material facts appear not in dispute.

Appellants and a number of other Negroes gathered in a stretch of woods located on the west boundary of the right of way of the log railroad running north and south from the timber holdings of the Crossett Lumber Company. This stretch of woods constituted the "gambling house," approximately one mile from human habitation and inaccessible by automobile. There were several tables or benches, consisting of two planks nailed between posts or trees at this particular site, and had been for a number of years. These tables were utilized for "crap shooting," or playing dice, for money and one of these tables appears to have been set up and operated by appellant.

On these facts appellant was convicted of a felony under § 41-2001, Ark. Stats. (1947), which provides: "§ 41-2001. Keeping gambling house—Penalty.—Every person who shall keep, conduct or operate, or who shall

794

be interested, directly or indirectly, in keeping, conducting or operating any gambling house, or place where gambling is carried on, or who shall set up, keep or exhibit, or cause to be set up, kept or exhibited, or assist in setting up, keeping or exhibiting, any gambling device, or who shall be interested directly, or indirectly in running any gambling house, or in setting up and exhibiting any gambling device or devices, either by furnishing money, or other articles for the purpose of carrying on any gambling house, shall be deemed guilty of a felony, and on conviction thereof, shall be confined in the State penitentiary for not less than one (1) year nor more than three (3) years. (Acts 1913, No. 152, § 1, p. 613; C. & M. Dig., § 2632; Pope's Dig., § 3322.)''

Another section of the statute, 41-2003, provides: ''§ 41-2003. Keeping gaming device—Penalty.—Every person, who shall set up, keep, or exhibit any gaming table, or gambling device, commonly called A. B. C., E. O., roulette, rouge et noir, or any faro bank or any other gaming table or gambling device, or bank of the like or similar kind, or of any other description although not herein named, be the name or denomination what it may, adapted, devised or designed for the purpose of playing any game of chance, or at which any money or property may be won or lost, shall be deemed guilty of a misdemeanor, and on conviction thereof, shall be fined in any sum, not less than one hundred dollars ($100.00), and may be imprisoned any length of time, not less than thirty (30) days nor more than one (1) year. (Rev. Stat., ch. 44, div. 6, art. 3, § 1; C. & M. Dig., § 2630; Pope's Dig., § 3320.)''

Appellant earnestly insists that on the record here he was not guilty of a felony and was prosecuted under the wrong section. I think appellant is correct in his contention. As I view it, he was guilty of a misdemeanor under § 41-2003.

We must bear in mind that appellant was charged with the crime of ''keeping a gambling house'' which is a felony under § 41-2001.

Just what did the Legislature have in mind by this statute? What specific phase was it intended to cover? This court has given, I think, a rather clear answer to these questions in *Turner* v. *State,* 153 Ark. 40, 239 S. W. 373, where it said: "This statute is leveled at the specific offense of 'keeping, conducting or operating a house or place' for the purpose of allowing gambling to be carried on therein, or any gambling device or devices to be set up and exhibited therein. The gravamen of the offense is the maintaining of a house or place where those who desire to engage in gambling or to exhibit any gambling device, or devices, may resort and find shelter, so to speak, while indulging in their gambling practices. The gist of the offense is the keeping of the house or place for the purposes named therein."

It seems obvious to me that our lawmakers never intended that a few crude planks set up out in the open woods upon which dice games are played should come within the purview or meaning of a gambling house as this court has pointed out in the Turner case, above. If the term "gambling house" as used in § 41-2001, be construed to include every place where gambling is carried on, then why did it not omit "gambling house" and use "the place where gambling is carried on" only. Section 41-2001 (Act 152, § 1, p. 613 of 1913) did not repeal the misdemeanor statute above (41-2003).

In *Johnson* v. *State,* 101 Ark. 159, 141 S. W. 493, a Negro dice game in the woods was held to be a violation of the misdemeanor statute above setting up a gambling device.

It is "a settled rule of statutory construction that statutes relating to a subject must be considered as a whole and to get at the meaning of any part thereof we must read it in the light of other provisions relating to the same subject," *Wolf & Bailey* v. *Phillips,* 107 Ark. 374, 155 S. W. 924.

"The legislative intent is to be derived from a fair and reasonable construction of the act, having in mind the thing desired to be accomplished or the evil to be

remedied, * * *." *State* v. *Handlin,* 100 Ark. 175, 139 S. W. 1112.

"All laws are to be given sensible construction, and literal application of statute which would lead to absurd consequences should be avoided whenever reasonable application can be given consistent with legislative purposes." *Merritt* v. *No Fence District No. 2, Jefferson County,* 205 Ark. 1129, 172 S. W. 2d 684.

I am firmly of the conviction that our Legislature never intended that any man, white or black, should be branded as a felon and confined in the State Penitentiary on a state of facts which this record presents.

I am unable to join the majority in solemnly declaring that our lawmakers intended that a few planks set up under the trees, and on which the game of "shooting dice" is played, should constitute a gambling house within the common sense meaning of that term as used in § 41-2001. Appellant was guilty here of a misdemeanor and nothing more, and the judgment should be reversed.

ROBINSON, J., joins in this dissent.

PAUL WARD, J., dissenting. For two reasons I cannot agree with the majority opinion.

In the first place, § 41-2001 contemplates some kind of a house or building and not the wide open spaces. A different interpretation is reached by the majority apparently because the statute contains the word "place," but to get the significance of the use of the word "place" the entire context must, of course, be read and considered. The first part of the section reads as follows:

"Every person who shall keep, conduct or operate, or shall be interested, directly or indirectly, in keeping, conducting or operating any gambling *house,* or *place* where gambling is carried on . . . ."

It seems to me that a fair construction of the English language indicates that the Legislature, by using the phrase "or place where gambling is carried on," intended to clarify the *thing* to be prohibited rather than to clarify

the *place* where it was to be prohibited. If, by the above language, the Legislature meant to clarify the "place" then it was not only meaningless but also confusing to use the word "house" in the first instance.

In the second place, I think the cause should have been reversed because the State failed to show the defendant had some kind of interest as a banker or exhibitor in the gambling activities. This was held to be necessary in the case of *Tully* v. *State* which was cited by the majority. The majority opinion, however, attempts to distinguish the *Tully* case on the ground it construed § 41-2003 of the Ark. Statutes whereas this defendant was convicted under § 41-2001. A casual reading of both sections discloses that neither says anything about the defendant having any "interest" in the activities. The only evidence set out in the majority opinion approaching the question of "interest" is the following: "He (defendant) would hold the money—'keep it straight.' Everett Colbert was 'the boss' of operations at the table." In the *Tully* case it was admitted the defendant controlled the room and the table and held the money and cashed the "chips." I can think of no reason why the reasoning applied in the *Tully* case should not be applied in this case.