SIMMONS *v.* MURPHY.

5-2744                                   360 S. W. 2d 765

Opinion delivered October 8, 1962.

*Bruce Bennett* and *Mahony & Yocum,* for appellant.

*J. S. Brooks* and *Spencer & Spencer,* for appellee.

JIM JOHNSON, Associate Justice. This is an action by appellant, J. A. Simmons, against appellee, Marie Murphy, seeking to set aside and cancel a warranty deed which was executed and delivered by appellant to appellee on August 18, 1958, and recorded on February 2, 1959, purporting to convey certain lands in Union County. The complaint admitted that appellant executed the deed here in question, but alleged *inter alia* that appellant was ill and afraid he was going to die, and made the deed intending only to convey title to appellee in event of his death. Appellee answered, pleading *inter alia* that the deed was made and delivered with no reservations or conditions, either express or implied. The trial court held that appellant failed to sustain the burden of proof and dismissed the cause for want of equity and quieted and confirmed title to the land in the appellee as against all claims of appellant. This appeal followed.

For reversal, appellant contends the trial court's finding that the deed was delivered within the meaning of the law is not sustained by the evidence.

Appellee is the niece of appellant's first wife. Following the death of appellee's mother, when appellee was about one year old, she and her three sisters were taken into appellant's home and raised as his own children. The record is replete with testimony of appellant's goodness to appellee and her sisters over a long period of time. His kindness is not in issue. The question in issue is whether appellant proved there was no delivery of the deed.

From appellant's own testimony, he had drawn many deeds over a period of 45 years for himself and his employers. He had purchased some 40,000 to 50,000 acres of land, 250 million feet of timber, 2,000 acres of mineral rights, 15,000 acres of oil and gas leases, and he had also prepared leases and deeds for friends and neighbors "numbers and numbers of times." He testified that he had drawn "numbers" of deeds containing conditions, exceptions and reservations, and that the deed to appellee contained none. From a reading of the testimony, appellant obviously has a thorough understanding of deeds and property transactions.

There is evidence that shortly after the death of appellant's first wife, he told appellee and her sisters that he wanted to deed the "home property" to them or to some of them. The deed was prepared at appellant's direction. He executed it, had it acknowledged, and manually delivered the deed to appellee, without any words or acts indicating any reservations or restrictions. Some months after the conveyance appellee had the deed recorded.

There is evidence that appellant was a sick man about the time he made this deed, but there is also evidence of mineral deeds negotiated, prepared and recorded at this same time, in the furtherance of appellant's usual business.

Subsequent to the execution and recordation, appellant leased the property from appellee at a time when apparently he was no longer sick nor afraid he was going to die but in fact was preparing to remarry. He drafted

and signed a rental contract in which appellee is named as owner of the property, and actually paid rent for seven months. Both appellant's and appellee's acts are consistent with a completed delivery—appellee paid taxes and insurance on the property, and lived there until appellant's remarriage. Now, some two years after the conveyance, appellant claims there was no delivery.

In the Chancellor's detailed and cogent opinion, he stated:

"In the case at bar, plaintiff (appellant) alleged and so testified that he was in 'very bad health' and was afraid he was going to die when he made and delivered the deed to her, 'intending for title to pass to her in the event that death ensued such illness.'

"It must be noted, however, that plaintiff (appellant), did not allege nor did he testify that defendant (appellee) was aware of any mental reservations, nor did he testify that he told her of such intention or that there was any reservation on his part."

As stated in 26 C. J. S. at page 681:

"A mental reservation contrary to the grantor's expressed intention to convey title, or a subsequent change of intention, does not destroy the effect of a completed delivery."

This court has consistently held that in a proceeding to cancel a solemn deed, on the theory of nondelivery or otherwise, the quantum of proof required must rise above a preponderance of the testimony: it must be clear, cogent and convincing. *Stephens* v. *Keener,* 199 Ark. 1051, 137 S. W. 253.

While there was testimony elicited from appellee on cross-examination tending to show that she was somewhat confused as to when she thought legal title passed, and that she had knowledge of appellant's intention to remarry prior to the recordation of the deed, and further evidence that in the course of appellant's vast real estate transactions title to various properties was, from time to time, placed in her name as a "straw" title-holder for

the convenience of appellant, we cannot, from the record before us on trial *de novo,* in the instant case, say that the learned Chancellor was wrong in concluding that appellant failed to produce the quantum of proof required to set aside the deed.

Affirmed.